STATE OF NORTH CAROLINA v. LUDY FERNANDO ESCOTO AND JOSE LUIS RAMOS

No. COA03-70

(Filed 3 February 2004)

## 1. Criminal Law— motion to sever trial—joinder of cases

The trial court did not err in a first-degree burglary, multiple first-degree kidnapping, and double robbery with a dangerous weapon case by denying a defendant's motion to sever the trial and by joining the cases of the two defendants even though an inmate testified about what the other defendant said about the events in question while incarcerated, because: (1) the *Bruton* rule and N.C.G.S. §15A-927(c)(1) do not apply when both the inmate and the codefendant testified and were subject to cross-examination by defendant; (2) our state has a strong policy favor-

ing the consolidated trials of defendants accused of collective criminal behavior; (3) N.C.G.S. § 15A-927(c)(2) grants the trial court wide discretion in determining severance, and the trial court did not abuse that discretion; (4) defendants do not present conflicting defenses; and (5) even assuming it was error to deny the motion to sever, such error was not prejudicial in light of the other evidence against defendant.

**2. Evidence— testimony of jailmate—relevancy**

The trial court did not err in a first-degree burglary, multiple first-degree kidnapping, and double robbery with a dangerous weapon case by failing to exclude the testimony of a codefendant's jailmate, because: (1) the testimony was relevant since it tended to prove that defendant and his codefendant concocted a scheme to avoid liability for their criminal actions; and (2) defendant failed to demonstrate how this testimony was so unfair that a different result at trial would have been likely.

**3. Constitutional Law— double jeopardy—kidnapping— armed robbery—restraint**

The trial court did not violate a defendant's double jeopardy rights by failing to dismiss the kidnapping charges related to two of the victims even though defendant was charged with armed robbery for those two victims as well, because there was sufficient restraint of both victims beyond that inherent in the armed robbery to submit both charges to the jury.

**4. Criminal Law— prosecutor's argument—defendant coached to lie by attorney**

The trial court did not err in a first-degree burglary, multiple first-degree kidnapping, and double robbery with a dangerous weapon case by overruling a defendant's objection to a portion of the district attorney's closing argument stating that defendant had been coached to lie by his attorney, because: (1) the trial court gave a curative instruction; and (2) there is no case law entitling defendant to a new trial based on the alleged cumulative effect of this argument and the testimony of the codefendant's jailmate.

**5. Appeal and Error— preservation of issues—failure to present issue at trial**

Although defendant contends he was not advised of his rights under the Vienna Convention upon his arrest, the record

contains no evidence that defendant presented this issue at the trial court and the question is therefore not properly before the Court of Appeals.

**6. Kidnapping— motion to dismiss—sufficiency of evidence— presence of victims in house**

The trial court did not err by denying a defendant's motions to dismiss the charges of kidnapping of two of the victims, because the presence of the two victims in the house at the time of the burglary was sufficiently proven.

**7. Robbery— armed—motion to dismiss—sufficiency of evidence—prayer for judgment continued**

The trial court did not err by denying a defendant's motions to dismiss the charges of armed robbery, because: (1) no final judgment has been entered as to the convictions for armed robbery when a prayer for judgment continued was entered for both of these charges; and (2) if the State moves the trial court to impose judgment on those charges and the court does impose judgment, defendant may raise the objection in an assignment of error on appeal.

**8. Appeal and Error— appealability—no final judgment entered**

Although defendant contends the robbery indictments were fatally defective since they failed to sufficiently describe the subject property, this assignment of error is dismissed because no final judgment has been entered on these charges.

**9. Burglary; Kidnapping— indictment—particular felony intended**

The indictments used to charge defendant with burglary and kidnapping were not defective even though they failed to specify the particular felony intended, because: (1) burglary and kidnapping indictments need not allege the specific felony a defendant intended to commit at the time of the criminal act; and (2) an indictment couched in the language of the statute is sufficient to charge the statutory offense.

Appeal by defendants from judgments entered 24 May 2002 by Judge James C. Spencer, Jr. in Superior Court, Alamance County. Heard in the Court of Appeals 30 October 2003.

*Attorney General Roy Cooper, by Special Deputy Attorney General Amar Majmundar and Assistant Attorney General Sharon Patrick-Wilson, for the State.*

*Daniel F. Read and Maria J. Mangano for defendant-appellant Ludy Fernando Escoto; Paul M. Green for defendant-appellant Jose Luis Ramos.*

McGEE, Judge.

Defendants Ludy F. Escoto (Escoto) and Jose Luis Ramos (Ramos) (collectively defendants) were tried jointly and each was found guilty on 24 May 2002 of one count of first degree burglary in violation of N.C. Gen. Stat. § 14-51, five counts of first degree kidnapping in violation of N.C. Gen. Stat. § 14-39, and two counts of robbery with a dangerous weapon in violation of N.C. Gen. Stat. § 14-87. The trial court found defendants to have a prior record level I, and sentenced defendants to a minimum term of sixty months and a maximum term of eighty-one months, active imprisonment, for the burglary conviction and the five kidnapping convictions, to run consecutively. Prayer for judgment was entered for each of the armed robbery convictions. Defendants appeal.

The evidence at trial tended to show that on 31 March 2001, at approximately 8:00 p.m., defendants and three other men went to the home of Maria Carrera (Carrera) and Antonio Munoz (Munoz) in Burlington, North Carolina. Martin Arrollo (Arrollo), Juan Manual Garduno (Garduno), Librada Pagan (Pagan), and Angela Espana (Espana) were also present in the house. The men entered the home and forced five victims onto the floor with guns and restrained them using tape, shoelaces, and telephone cord. The men also placed tape over the mouths of the victims, searched their pockets, and took $700.00 from Arrollo. In addition, Escoto directed the other men to unhook a stereo. After being disconnected, the stereo was moved a short distance but not removed from the home. Defendants and the other three men also searched the house for drugs and money. Arrollo testified that both he and Munoz were hit by someone during the robbery. Munoz testified that he was kicked by someone other than defendants.

The sixth victim present at the house, Carrera, had seen the approaching men on the home security system and was able to escape from the house undetected. Carrera stopped a woman in a passing car and asked her to call the police. When the police arrived,

defendants were arrested but the other three men involved were not apprehended. Money was seized from Ramos and one semiautomatic rifle was recovered.

Defendants testified at trial that they were not aware of the true reason they were going to the house until they were on their way to Burlington. Escoto testified he was under the impression they were going to a construction job. He testified that one of the other men involved threatened to kill him, his girlfriend, and his child if he did not participate in the robbery. Ramos testified he thought they were going to a dance club in Burlington. He said "they put the gun on me and had me tie the people up." Ramos continued his testimony by explaining why he was afraid not to participate in the robbery.

## I. Ludy Fernando Escoto

[1] We first note defendant has failed to present an argument in support of assignments of error numbers three and six and they are deemed abandoned pursuant to N.C.R. App. P. 28(b)(6). Defendant's first two assignments of error relate to the joinder of defendant's cases with those of co-defendant Ramos and the subsequent admission of testimony over defendant's objection. Defendant argues he was denied a fair trial by the trial court's overruling his objection to joinder of his case with Ramos. Defendant's objection is based on the fact that Michael Williamson (Williamson), an individual confined with Ramos in jail, was able to testify to what Ramos told him about the events in question. Defendant argues that had his case not been joined with Ramos' case, the testimony of Williamson would have been irrelevant and inadmissible in defendant's trial. However, the following testimony regarding what Ramos told Williamson, which defendant argues bore heavily on his own credibility, was admitted over defendant's objection:

> So he got caught up in the room. He seen the blue lights bouncing off the wall. Said he wiped down the gun, the AK-47, threw it up under the bed, and tried to run out the house and get in the car. The police was already there. So he had told them a story that they had forced him, they had forced him to do that. And he said that was the way he could try to play it off to make it, I guess make his case look like that he didn't have nothing to do with it.

Defendant argues that by implication, it is probable that the jury found that he participated knowingly and willingly rather than being

threatened as he had testified. Defendant argues this testimony prejudiced him such that he was denied a fair trial.

Objections to joinder and severance in criminal cases are governed by N.C. Gen. Stat. § 15A-927(c) (2003). Subsection (c)(1) pertains to a situation where a co-defendant makes an out-of-court statement which references the defendant but is not admissible against the defendant. In such a case, the State must do one of the following: (1) conduct a joint trial where the statement is not admitted; (2) conduct a joint trial where the statement is admitted after all references to the defendant have been omitted; or (3) conduct a separate trial of the objecting defendant. However, in the case before us, subsection (c)(1) is not applicable.

> G.S. 15A-927(c)(1) codifies substantially the decision in *Bruton v. United States*, 391 U.S. 123, 20 L.Ed. 2d 476, 88 S.Ct. 1620 (1968), which held that the receipt in evidence of the confession of one codefendant posed a substantial threat to the other codefendant's Sixth Amendment right of confrontation and cross-examination because the privilege against self-incrimination prevents those who are implicated from calling the defendant who made the statement to the stand.

*State v. Johnston,* 39 N.C. App. 179, 182, 249 S.E.2d 879, 881 (1978), *disc. review denied,* 296 N.C. 738, 254 S.E.2d 179 (1979). In the case before us, both Williamson and Ramos testified and were subject to cross-examination by defendant. Thus, the *Bruton* rule and subsection (c)(1) do not apply. *Johnston,* 39 N.C. App. at 183, 249 S.E.2d at 881. *See also State v. Fox,* 274 N.C. 277, 291, 163 S.E.2d 492, 502 (1968); *State v. Rasor,* 319 N.C. 577, 582, 356 S.E.2d 328, 332 (1987).

Defendant secondarily relies on N.C. Gen. Stat. § 15A-927(c)(2) which pertains to situations other than those governed by subsection (c)(1) and "requires the court to grant severance whenever it is necessary to promote or achieve a fair determination of guilt or innocence." *Rasor,* 319 N.C. at 581, 356 S.E.2d at 331. "A trial court's ruling on such questions of joinder or severance, however, is discretionary and will not be disturbed absent a showing of abuse of discretion." *State v. Carson,* 320 N.C. 328, 335, 357 S.E.2d 662, 666-67 (1987). "The trial court 'may be reversed for an abuse of discretion only upon a showing that its ruling was so arbitrary that it could not have been the result of a reasoned decision.' " *Carson,* 320 N.C. at 335, 357 S.E.2d at 667 (quoting *State v. Hayes,* 314 N.C. 460, 471, 334 S.E.2d 741, 747 (1985)).

In the case before us, the trial court did not abuse its discretion in denying the motion to sever. "Our state has a 'strong policy favoring the consolidated trials of defendants accused of collective criminal behavior.' " *State v. Roope,* 130 N.C. App. 356, 364, 503 S.E.2d 118, 124, *disc. review denied,* 349 N.C. 374, 525 S.E.2d 189 (1998) (quoting *State v. Barnes,* 345 N.C. 184, 222, 481 S.E.2d 44, 64-65, *cert. denied, Chambers v. North Carolina,* 522 U.S. 876, 139 L. Ed. 2d 134 (1997), *cert. denied, Barnes v. North Carolina,* 523 U.S. 1024, 140 L. Ed. 2d 473 (1998)).

The cases relied upon by defendant are all distinguishable. *State v. Gonzalez,* 311 N.C. 80, 94, 316 S.E.2d 229, 237 (1984) is not relevant because error was found based on N.C. Gen. Stat. § 15A-927(c)(1), the subsection which is not applicable to this case. *State v. Pickens,* 335 N.C. 717, 725, 440 S.E.2d 552, 556-57 (1994) is distinguishable because it involved co-defendants who had irreconcilable defenses such that the jury could infer guilt based on this conflict alone. However, in the case before us, defendants do not present conflicting defenses. Lastly, *State v. Hucks,* 323 N.C. 574, 581, 374 S.E.2d 240, 245 (1988) is also distinguishable because in *Hucks,* one of the co-defendants entered a guilty plea but the trial court refused to sever the cases. Again, those facts are not similar to the case before us. In light of the wide discretion accorded the trial court in determining severance, we find assignment of error number one to be without merit.

Even assuming it was error to deny the motion to sever, such error was not prejudicial.

> The differences in evidence from one codefendant to another ordinarily must result in a conflict in the defendants' respective positions at trial of such a nature that, in viewing the totality of the evidence in the case, the defendants were denied a fair trial. However, substantial evidence of the defendants' guilt may override any harm resulting from the contradictory evidence offered by them individually.

*Barnes,* 345 N.C. at 220, 481 S.E.2d at 63-64 (citations omitted). For example, in *State v. Littlejohn,* 340 N.C. 750, 756, 459 S.E.2d 629, 632-33 (1995), the Supreme Court held that assuming that admission of a co-defendant's confession was error, it was harmless beyond a reasonable doubt in light of the other evidence against the defendant.

Similarly, in the case before us, there is significant evidence supporting defendant's guilt. Defendant admits going to the Burlington

house and participating in the robbery. Although defendant argues he was forced to participate, Arrollo testified that defendant "came armed into the house. He also participated, telling us to get on the ground. He was one of the most aggressive, because he was one of the ones that hit us most when we were on the ground." Arrollo further testified that defendant "would tell the others to hurry, like giving them orders" and that defendant did not seem afraid and was not threatened by anyone during the robbery. Further, he testified that defendant "was one of the most aggressive ones" and "he was the one who hit us the most, and he was the one who told the others to unhook the electrical equipment and to take them out." Similarly, Munoz testified that defendant was "giving orders" and that he never saw anyone threaten defendant. Further, in response to being asked whether defendant ever seemed afraid, Munoz responded, "[o]n the contrary. He would, he would threaten all of us." In light of this evidence, any error committed was harmless beyond a reasonable doubt.

**[2]** In addition to arguing that severance should have been granted, defendant argues the testimony of Williamson should have been excluded either for lack of relevance under N.C. Gen. Stat. § 8C-1, Rule 401 or for its prejudicial nature under N.C. Gen. Stat. § 8C-1, Rule 403. Although "a trial court's rulings on relevancy technically are not discretionary and therefore are not reviewed under the abuse of discretion standard applicable to Rule 403, such rulings are given great deference on appeal." *State v. Wallace*, 104 N.C. App. 498, 502, 410 S.E.2d 226, 228 (1991), *disc. review denied*, 331 N.C. 290, 416 S.E.2d 398, *cert. denied*, 506 U.S. 915, 121 L. Ed. 2d 241 (1992). " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2003). In the case before us, Williamson's testimony was relevant because it tended to prove that defendant and his co-defendant concocted a scheme to avoid liability for their criminal actions.

Further, the testimony should not have been excluded on the basis of N.C. Gen. Stat. § 8C-1, Rule 403 which provides for the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." N.C. Gen. Stat. § 8C-1, Rule 403 (2003). "The determination to exclude evidence on these grounds is left to the sound discretion of the trial court." *State v. Mickey*, 347 N.C. 508, 518,

495 S.E.2d 669, 676, *cert. denied*, 525 U.S. 853, 142 L. Ed. 2d 106 (1998). " 'A trial court may be reversed for abuse of discretion only upon a showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision.' " *Mickey*, 347 N.C. at 518, 495 S.E.2d at 676 (quoting *State v. Riddick*, 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986)).

"The burden is on the party who asserts that evidence was improperly admitted to show both error and that he was prejudiced by its admission. The admission of evidence which is technically inadmissible will be treated as harmless unless prejudice is shown such that a different result likely would have ensued had the evidence been excluded."

*State v. Smith*, 155 N.C. App. 500, 508, 573 S.E.2d 618, 624 (2002), *disc. review denied*, 357 N.C. 255, 583 S.E.2d 287 (2003) (quoting *State v. Gappins*, 320 N.C. 64, 68, 357 S.E.2d 654, 657 (1987) (citations omitted)). Defendant simply argues this testimony may have impermissibly motivated the jury to conclude that defendant faked coercion and duress simply because Ramos admitted to doing so. Defendant fails to demonstrate how this testimony was so unfair that a different result at trial would have been likely. Accordingly, assignment of error number two is without merit.

[3] Defendant next argues the trial court erred in denying defendant's motions to dismiss the charges against him of kidnapping Arrollo and Munoz. "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991) (quoting *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980)). "The evidence must be viewed in the light most favorable to the State, and the State must receive every reasonable inference to be drawn from the evidence. Any contradictions or discrepancies arising from the evidence are properly left for the jury to resolve and do not warrant dismissal." *State v. King*, 343 N.C. 29, 36, 468 S.E.2d 232, 237 (1996) (citations omitted). "If the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpe-

trator of it, the motion should be allowed." *Powell*, 299 N.C. at 98, 261 S.E.2d at 117.

Defendant argues he was subjected to double jeopardy because both kidnapping and armed robbery charges were submitted to the jury concerning Arrollo and Munoz. Defendant claims submission of both was error because the restraint and removal of Arrollo and Munoz were an integral part of the armed robbery. "Kidnapping is the unlawful, nonconsensual confinement, restraint or removal from one place to another of a person for the purpose of committing specified acts that are set forth in N.C. Gen. Stat. § 14-39 (2001)." *State v. Jones*, 158 N.C. App. 498, 501, 581 S.E.2d 103, 106, *cert. denied*, 357 N.C. 465, 586 S.E.2d 462 (2003). However, the North Carolina Supreme Court has "recognized that 'certain felonies (*e.g.*, forcible rape and armed robbery) cannot be committed without some restraint of the victim' and has held that restraint 'which is an inherent, inevitable feature of [the] other felony' may not be used to convict a defendant of kidnapping." *State v. Allred*, 131 N.C. App. 11, 20, 505 S.E.2d 153, 158-59 (1998) (quoting *State v. Fulcher*, 294 N.C. 503, 523, 243 S.E.2d 338, 351 (1978)).

> The key question here is whether the kidnapping charge is supported by evidence from which a jury could reasonably find that the necessary restraint for kidnapping "exposed [the victim] to greater danger than that inherent in the armed robbery itself, . . . [or] is . . . subjected to the kind of danger and abuse the kidnapping statute was designed to prevent."

*State v. Pigott*, 331 N.C. 199, 210, 415 S.E.2d 555, 561 (1992) (quoting *State v. Irwin*, 304 N.C. 93, 103, 282 S.E.2d 439, 446 (1981)). "Evidence that a defendant increased the victim's helplessness and vulnerability beyond what was necessary to enable the robbery or rape is sufficient to support a kidnapping charge." *State v. Muhammad*, 146 N.C. App. 292, 295, 552 S.E.2d 236, 237 (2001).

In the case before us, there was sufficient restraint of both Arrollo and Munoz beyond that inherent in the armed robbery to submit both charges to the jury. Arrollo testified that pistols were put into his face and he and the others were thrown to the floor, made to lie face down, and had tape placed around their hands and over their mouths. Arrollo further testified that he was struck by the robbers and that defendant was the man who "hit us the most." Similarly, Munoz testified that he had a gun pointed at his head

and was "strapped" with shoelaces and tape and was placed face down on the floor.

Taken together, these actions constituted restraint beyond what was necessary for the commission of robbery with a dangerous weapon. Defendant cites cases with egregious facts as examples of when this Court and our Supreme Court have found that sufficient additional restraint is present to submit both charges to the jury. However, there are also a number of cases with more subdued facts where our Courts have held that additional restraint is present. *See State v. Beatty*, 347 N.C. 555, 495 S.E.2d 367 (1998) (holding that there was no kidnapping where the victim was forced to go inside the restaurant and held at gunpoint during the robbery but was not harmed or otherwise moved; but that there was a kidnapping where a second victim was forced to lie on the floor with his wrists and mouth bound with duct tape and then kicked twice in the back); *Pigott*, 331 N.C. 199, 415 S.E.2d 555 (sustaining the kidnapping conviction where the defendant bound the victim's hands and feet); and *Fulcher*, 294 N.C. 503, 243 S.E.2d 338 (upholding the kidnapping conviction where the defendant bound both rape victims' hands). Accordingly, assignment of error number four is without merit.

**[4]** Defendant next argues the trial court erred in overruling defendant's objection to a portion of the district attorney's closing argument where the district attorney argued to the jury that defendant had been coached to lie by his attorney. We note that " '[p]rosecutors are granted wide latitude in the scope of their argument.' " *State v. Jordan*, 149 N.C. App. 838, 842, 562 S.E.2d 465, 467 (2002) (quoting *State v. Zuniga*, 320 N.C. 233, 253, 357 S.E.2d 898, 911, *cert. denied*, 484 U.S. 959, 98 L. Ed. 2d 384 (1987)). "As a general rule, improper argument of counsel is cured by the court's action in cautioning counsel to confine argument to matters in evidence and cautioning the jury not to consider it." *State v. Paul*, 58 N.C. App. 723, 725, 294 S.E.2d 762, 763, *disc. review denied*, 307 N.C. 128, 297 S.E.2d 402 (1982). "Defendant is entitled to a new trial only if the impropriety is shown to be prejudicial." *Id.*

In the case before us, the trial court instructed the jury as follows:

> To the extent that the District Attorney's argument contained any implication, whether intended or not, that any inconsistencies in those statements resulted from the defendant having been coached by his attorney, that argument would be improper, and

you are instructed to disregard and not consider any such impli-
cation, and to draw no such inference from that portion of the
District Attorney's argument.

Despite this curative instruction, defendant argues that the cumula-
tive effect of the district attorney's argument and the testimony by
Williamson combined to prejudice his defense. However, defendant
cites no authority for entitlement to a new trial based on such a
cumulative effect. In light of this curative instruction, assignment of
error number five is overruled.

[5] Defendant's final argument is based on the fact that defendant
was not advised of his rights under the Vienna Convention upon his
arrest. The record contains no evidence that defendant presented this
issue to the trial court and the question is therefore not properly
before this Court. *See* N.C.R. App. P. 10(b)(1) and *Buckingham v.
Buckingham*, 134 N.C. App. 82, 91, 516 S.E.2d 869, 876, *disc. review
denied*, 351 N.C. 100, 540 S.E.2d 353 (1999).

## II. Jose Luis Ramos

[6] We note that defendant has failed to present an argument in sup-
port of assignments of error numbers one and three through ten, and
they are deemed abandoned pursuant to N.C.R. App. P. 28(b)(6).
Defendant first argues the trial court erred in denying his motions to
dismiss the charges of kidnapping of Espana and Pagan. Defendant
asserts that denial of the motions was error because Espana and
Pagan were not sufficiently identified as being present at the house
when the burglary occurred.

"Upon defendant's motion for dismissal, the question for the
Court is whether there is substantial evidence (1) of each essential
element of the offense charged, or of a lesser offense included
therein, and (2) of defendant's being the perpetrator of such offense.
If so, the motion is properly denied." *Powell*, 299 N.C. at 98, 261
S.E.2d at 117. "Substantial evidence is 'such relevant evidence as a
reasonable mind might accept as adequate to support a conclusion.' "
*Vause*, 328 N.C. at 236, 400 S.E.2d at 61 (quoting *Smith*, 300 N.C. at
78-79, 265 S.E.2d at 169). "The evidence must be viewed in the light
most favorable to the State, and the State must receive every reason-
able inference to be drawn from the evidence. Any contradictions or
discrepancies arising from the evidence are properly left for the jury
to resolve and do not warrant dismissal." *King*, 343 N.C. at 36, 468
S.E.2d at 237 (citations omitted).

Under N.C.G.S. § 14-39, a defendant commits the offense of kidnapping if he: (1) confines, restrains, or removes from one place to another; (2) a person; (3) without the person's consent; (4) for the purpose of facilitating the commission of a felony, doing serious bodily harm to the person, or terrorizing the person.

*State v. Mann*, 355 N.C. 294, 302, 560 S.E.2d 776, 782, *cert. denied*, 537 U.S. 1005, 154 L. Ed. 2d 403 (2002). In the case before us, the presence of Espana and Pagan in the house at the time of the burglary was sufficiently proven to withstand defendant's motions to dismiss. When asked who lived with him at the Burlington house on 31 March 2001, Arrollo answered: "Manuel Garduno, Antonio Munoz, Mari[a] [Carrera], Librada [Pagan], Angela [Espana] and another friend[] who is not here these days." The next question asked by the State pertained to what Arrollo was doing around 9:00 p.m. on 31 March and who was in the house. Arrollo responded, "Maria was there, the ones I mentioned." In light of the close sequence of questions, it is obvious Arrollo was including all the individuals he had recently mentioned as living in the home. Significantly, both Espana and Pagan were included in the list of the individuals Arrollo testified were present. Once Arrollo identified Pagan and Espana as being present in the house at the time of the burglary, witnesses who subsequently testified simply referred to them generically. For example, Carrera testified that Martin [Arrollo], Tony [Munoz], Manuel [Garduno], and "the other two victims, the two girls" were in the house at the time of the burglary. Additionally, when Munoz was asked with whom he lived in the Burlington house in March 2001, Munoz testified as follows: "My wife, Maria [Carrera]. My friend, Martin [Arrollo], Manuel [Garduno], and the other two girls that were visiting." In light of the fact that no other girls besides Espana and Pagan had been mentioned, Munoz was clearly referring to them.

In addition to testimony by Arrollo, Carrera, and Munoz, defendant testified that five people were in the living room watching television when he and the other men entered the house. He again testified that five people were present and that he was told to "tie them up." Defendant made another reference to the girls when he testified that "[e]verybody was on the ground; and the two girls, they were, they were also laying down there. And they were crying." Thus, although Espana and Pagan did not testify at trial and were only referred to by their first names once and thereafter only generically, there was sufficient evidence for a reasonable mind to conclude that Espana and Pagan were present at the time of the burglary. Accordingly, assignment of error number two is overruled.

**[7]** With respect to assignment of error number two, defendant also argues the trial court erred in denying his motions to dismiss the two armed robbery charges. Although the trial court did not dismiss the charges, the trial court did enter a prayer for judgment continued for each of the charges at sentencing. "A defendant who has entered a plea of not guilty to a criminal charge, and who has been found guilty of a crime, is entitled to appeal as a matter of right when final judgment has been entered." N.C. Gen. Stat. § 15A-1444(a) (2003). N.C. Gen. Stat. § 15A-101(4a) (2003) states that "[p]rayer for judgment continued upon payment of costs, without more, does not constitute the entry of judgment." *See also State v. Jones*, 151 N.C. App. 317, 326, 566 S.E.2d 112, 118 (2002), *disc. review denied*, 356 N.C. 687, 578 S.E.2d 320, *cert. denied*, —— U.S. ——, 157 L. Ed. 2d 76 (2003); *State v. Southern*, 71 N.C. App. 563, 566, 322 S.E.2d 617, 619 (1984), *aff'd*, 314 N.C. 110, 331 S.E.2d 688 (1985).

In this case, no final judgment has been entered as to the convictions for armed robbery; therefore, our Court is unable to address this assignment of error under the circumstances in this case. Nevertheless, should the State move the trial court to impose judgment on the convictions of armed robbery and the trial court does impose judgment, defendant may raise the objection in an assignment of error on appeal. *Jones*, 151 N.C. App. at 326, 566 S.E.2d at 118 (our Court refused to address defendant's argument that the trial court erred in allowing the State's motion to amend the larceny indictment by changing the name of the alleged victim because prayer for judgment continued had been entered on the felonious larceny conviction). *See also State v. Maye*, 104 N.C. App. 437, 439-40, 410 S.E.2d 8, 10 (1991) (our Court refused to address defendant's argument that the trial court erred in "entering judgment and sentencing him" for drug convictions because the trial court had unconditionally continued prayer for judgment for the convictions at issue).

**[8]** Defendant next argues that the burglary, kidnapping, and robbery indictments were fatally defective and hence failed to confer jurisdiction on the trial court. With respect to the robbery indictments, defendant argues the indictments failed to sufficiently describe the subject property. However, as stated above, our Court is unable to address this assignment of error since no final judgment has been entered. *Jones*, 151 N.C. App. at 326, 566 S.E.2d at 118. *See also Maye*, 104 N.C. App. at 439-40, 410 S.E.2d at 10.

**[9]** Regarding the burglary and kidnapping indictments, defendant argues the indictments were defective since they failed to specify the

particular felony intended. The burglary indictment charges that defendant "broke and entered with the intent to commit a felony therein." The kidnapping indictments charge that defendant committed the acts "for the purpose of [] facilitating the commission of a felony, or facilitating the flight following the defendant's participation in the commission of a felony."

Our Supreme Court has held that burglary and kidnapping indictments need not allege the specific felony a defendant intended to commit at the time of the criminal act. *State v. Freeman*, 314 N.C. 432, 435, 333 S.E.2d 743, 745 (1985) (kidnapping); *State v. Worsley*, 336 N.C. 268, 280-81, 443 S.E.2d 68, 73-74 (1994) (burglary), *State v. Roten*, 115 N.C. App. 118, 121-22, 443 S.E.2d 794, 796 (1994) (burglary). Defendant acknowledges these decisions but argues a United States Supreme Court case subsequent to these North Carolina cases mandates a different result. Defendant cites *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435 (2000), contending that "charging every essential element of a crime in the indictment is required by the U.S. Constitution." However, the Supreme Court actually held that " 'any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.' " *Apprendi*, 530 U.S. at 476, 147 L. Ed. 2d at 446 (quoting *Jones v. United States*, 526 U.S. 227, 243, n. 6, 143 L. Ed. 2d 311, 326, n. 6 (1999)).

*Apprendi* is distinguishable because it deals with a defendant who was charged with an initial crime which was then subjected to sentence enhancement based on the fact that the defendant had committed a hate crime. However, a hate crime had not been alleged in the indictment. The facts of the case before us are not similar to *Apprendi*, so reliance on *Apprendi* is misplaced. Further, following *Apprendi*, our Supreme Court has continued to recognize that "[a]s a general rule, 'an indictment couched in the language of the statute is sufficient to charge the statutory offense.' " *State v. Lucas*, 353 N.C. 568, 584, 548 S.E.2d 712, 724 (2001) (quoting *State v. Blackmon*, 130 N.C. App. 692, 699, 507 S.E.2d 42, 46, *cert. denied*, 349 N.C. 531, 526 S.E.2d 470 (1998)). Accordingly, this assignment of error is without merit.

No error.

Judges HUDSON and CALABRIA concur.