STATE OF NORTH CAROLINA v. LONG THANH NGUYEN

No. COA05-907

(Filed 18 July 2006)

## 1. Confessions and Incriminating Statements— Miranda warnings—Vietnamese translation

The trial court's conclusion that a Vietnamese defendant's waiver of his Miranda rights was knowing and voluntary was supported by the findings, to which he did not assign error. Although defendant finds fault with the use of a police officer to translate rather than a certified interpreter, there was no evidence that the officer was deceitful or acted improperly; furthermore, the officer was raised in Vietnam and could communicate clearly with defendant.

## 2. Criminal Law— instructions—prior acts of violence—limited to intended purpose

Questions in a first-degree murder prosecution about reports of domestic violence were within the scope of cross-examination of plaintiff's expert about his testimony regarding defendant's ability to form the intent to kill. An instruction limiting the testimony to its purpose was proper.

## 3. Criminal Law— prosecutor's closing argument—spousal abuse—statements repeated by expert

A prosecutor's closing argument about evidence of a first-degree murder defendant's abuse of his wife (the victim) were not grossly improper. The remarks referred to statements repeated by defendant's expert and properly admitted as impeachment of his conclusions, and the fact that the court had refused to allow the people who gave those statements to testify without stating reasons did not necessarily indicate that the evidence was prejudicial.

STATE v. NGUYEN

[178 N.C. App. 447 (2006)]

**4. Criminal Law; Constitutional Law— right to have con-
sulate contacted on arrest—not raised at trial—not inef-
fective assistance of counsel**

   A first-degree murder defendant's claim that the State vio-
lated his right to have his consulate contacted upon his arrest
was not reached because defendant did not raise the claim at
trial. Defendant's contention that the failure to raise the claim
constituted inadequate representation failed because he did not
show how contacting the consulate would have changed the out-
come of the case.

Appeal by defendant from judgment entered 24 September 2004
by Judge Steve A. Balog in Guilford County Superior Court. Heard in
the Court of Appeals 22 March 2006.

   *Attorney General Roy Cooper, by Assistant Attorney General
Daniel P. O'Brien, for the State.*

   *Massengale & Ozer, by Marilyn G. Ozer, for the defendant-
appellant*

ELMORE, Judge.

   Long Thanh Nguyen (defendant) was convicted of first degree
murder and now appeals the judgment entered against him. The
State's evidence tended to show that defendant, who was born and
educated in Vietnam, came to the United States in 2001 after his mar-
riage to Thu Nguyet-Thi Doan (Thu). Defendant and Thu fought often
about their marriage, and Thu had previously told defendant that she
wanted to separate from him.

   On the morning of 13 April 2003, defendant and Thu had been
arguing. After a heated oral altercation, defendant began hitting Thu.
Thu initially hit defendant back, but she eventually sat down on the
floor in the family's dining room. With Thu sitting on the floor, defend-
ant retrieved a large knife from a drawer in the kitchen and
approached Thu. After struggling for a while, Thu became tired and
laid down on her back on the floor. As Thu lay in a prone position,
defendant picked up the knife and stabbed her twelve times in her
neck, arms, and chest. Thu died from exsanguination after the left
and right carotid arteries and jugular veins in her neck were severed.

   After stabbing Thu, defendant rinsed the knife and returned it to
its kitchen drawer. Then, defendant grabbed his 18-month-old son

STATE v. NGUYEN

[178 N.C. App. 447 (2006)]

and was attempting to exit the house when he was confronted by his brother-in-law, Minh Tran (Minh). Minh, having seen Thu lying on the floor injured, attempted to call an ambulance; however, defendant jerked the telephone wires out of the wall and exited the house. Minh eventually flagged down a passing motorist who called police.

Once outside, defendant placed his son in the family minivan, which was parked in their driveway. In an apparent attempt to kill himself, defendant opened the minivan's gas tank and tried to place a lit piece of tissue paper in the minivan's gas nozzle.

After the failed attempt, defendant climbed into the minivan and drove erratically down the highway. Defendant soon lost control of the vehicle, causing the minivan to leave the roadway, become airborne, and crash into an automobile traveling on the highway below. Defendant received only minor injuries from the accident, consisting of airbag burn on his lower arms and a cut on his right ankle. Police who arrived at the accident scene placed defendant in handcuffs and transported him to the Greensboro Criminal Investigation Department.

After defendant's arrest, Greensboro Police Detective Leslie Lejune (Officer Lejune) contacted Officer Hein Nguyen[1] (Officer Nguyen), also of the Greensboro Police Department (GPD), to interpret statements for defendant. Officer Nguyen was a Vietnamese native who grew up fifteen miles from defendant's home town of Saigon.

Upon his arrival, Officer Nguyen, speaking in Vietnamese, introduced himself to defendant as a police officer and informed defendant of his *Miranda* rights. Defendant, who appeared to be calm, orally indicated that he understood each of his rights and signed a *Miranda* waiver form, placing his initials next to each right to indicate his understanding. Defendant then gave a statement, translated by Officer Nguyen and written by Officer Lejune, in which he admitted to stabbing Thu. Defendant was offered but declined food and bathroom breaks and medical attention for the cut on his ankle until he had finished giving his statement.

Defendant was indicted on 7 July 2003 for first degree murder. On 16 April 2004 defendant filed a motion to suppress evidence of any and all statements made by him to the Greensboro Police Department. Defense counsel asserted that defendant did not know-

---

1. Officer Hein Nguyen is of no relation to defendant, Long Thanh Nguyen.

ingly, intelligently, and voluntarily waive his *Miranda* rights, contending that, therefore, defendant's confession was made in violation of his United States and North Carolina Constitutional rights. Defendant's motion to suppress was denied in a court order dated 21 September 2004.[2]

At trial, defendant offered testimony by an expert, Dr. Michael Schaefer (Dr. Schaefer), a forensic psychologist. Dr. Schaefer interviewed defendant in prison one year after Thu's killing and reviewed documents from witnesses and people who knew defendant and his wife. Dr. Schaefer diagnosed defendant with an adjustment disorder with mixed anxiety and depressed mood, and dysthemic disorder, a type of "ongoing low-grade depression." Dr. Schaefer concluded that defendant's disorders, combined with the stressors leading up to 13 April 2003, rendered defendant incapable of forming a specific intent to kill Thu.

On cross-examination, Dr. Schaefer admitted that defendant's counsel had requested that the psychoanalysis be performed on defendant; also, Dr. Schaefer stated that the purpose of the evaluation was to find possible grounds for a diminished capacity defense, and that defendant was aware of this purpose.

Dr. Schaefer further admitted that some of the documents containing statements by persons who knew defendant "went against" defendant's responses to interview questions, including "reports of an ongoing pattern of domestic disturbance." However, Dr. Schaefer failed to conduct interviews with those persons who knew defendant and had made recorded statements regarding defendant's personality.[3] Dr. Schaefer admitted that the statements made by these persons, if true, could change his diagnosis of defendant's condition.

Defendant admitted to the jury that he committed second degree murder in killing Thu. The only element of first degree murder that defendant disputed was that he killed with premeditation and deliberation. On 24 September 2004 a jury found defendant guilty of first degree murder. Defendant gave notice of appeal in open court on the same day.

---

2. Defense counsel also objected at trial when the State first moved to introduce defendant's confession into evidence; this objection was overruled.

3. Defendant's expert also failed to obtain and review defendant's medical records.

I.

**[1]** By his first assignment of error, defendant argues that the trial court erred in failing to suppress defendant's confession in the face of evidence that defendant did not waive his *Miranda* rights understandingly, knowingly, and voluntarily. The trial court concluded as a matter of law that defendant "understandingly, knowingly, and voluntarily waived his *Miranda* rights" before being interviewed by Officer Nguyen.

In its landmark decision in *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694 (1966), the United States Supreme Court held that a suspect in the custody of police must be advised of the following specific rights:

> (1) that the individual has the right to remain silent; (2) that as a consequence of foregoing the right to remain silent, anything the individual says may be used in court against the individual; (3) that the individual has the right to consult with an attorney in order to determine how best to exercise his or her rights prior to being questioned; and (4) that if the individual cannot afford an attorney, one will be appointed.

*State v. Hyatt*, 355 N.C. 642, 654, 566 S.E.2d 61, 69 (2002). Here, defendant does not contest the fact that he initialed and signed a form commonly used to waive a suspect's *Miranda* rights; rather, he argues that his waiver and subsequent written statement to police should have been suppressed because he did not understandingly, knowingly, and voluntarily waive his *Miranda* rights before making his statement.

In considering a motion to suppress a statement for lack of voluntariness, the trial court must determine whether the State has met its burden of showing by a preponderance of the evidence that the statement was voluntarily and understandingly given. *State v. Mlo*, 335 N.C. 353, 363-64, 440 S.E.2d 98, 102, *cert. denied*, 512 U.S. 1224, 129 L. Ed. 2d 841 (1994). On appeal, the findings of the trial court are conclusive and binding if supported by competent evidence in the record. *Id.* at 364, 440 S.E.2d at 102; *see also State v. Hyde*, 352 N.C. 37, 44, 530 S.E.2d 281, 287 (2000); *State v. James*, 321 N.C. 676, 685-86, 365 S.E.2d 579, 585 (1988).

Here, however, defendant failed to separately assign error to any of the numbered findings of fact in the trial court's order denying defendant's motion to suppress. Therefore, our Court's review of this

assignment of error is "limited to whether the trial court's findings of fact support its conclusions of law." *State v. Cheek*, 351 N.C. 48, 63, 520 S.E.2d 545, 554 (1999).

In its pretrial order denying defendant's motion to suppress, the trial court found that, before beginning defendant's interview,

> Officer H. Nguyen used the GPD Miranda rights form to advise the defendant of his rights pursuant to Miranda v. Arizona and to document defendant's responses . . . . Officer H. Nguyen translated into Vietnamese the introductory paragraph: "Before asking you any questions, we want to advise you of your rights and determine that you understand what your rights are."

> Next Officer H. Nguyen translated into Vietnamese each of the five numbered rights on the form . . . . After each numbered right, before proceeding to the next one, [Officer Nguyen] asked the defendant if he understood that right. When the defendant responded as to each that he did understand it, his affirmative answer was recorded in the form in English as "yes." To further indicate that he had been advised of these rights and that he understood them, the defendant signed the form beneath the fifth right.

> Next Officer H. Nguyen read to the defendant in Vietnamese the WAIVER OF RIGHTS paragraph as set forth on the form. The defendant waived his rights and agreed to make a statement and confirmed this by signing the form below the Waiver of Rights paragraph.

The court also found that another qualified interpreter had been called by the GPD before the interview and had arrived approximately thirty minutes after the interview began. This interpreter, who would be paid by the GPD for his services, was released because defendant's interview had already begun.

We must now determine whether these findings support the trial court's conclusion that defendant's *Miranda* waiver was understandingly, voluntarily, and knowingly made. "The trial court's conclusion of law that defendant's statements were voluntarily made is a fully reviewable legal question." *Hyde*, 352 N.C. at 45, 530 S.E.2d at 288. "[T]he court looks at the totality of the circumstances of the case in determining whether [defendant's] confession was voluntary." *Id.* (quotation omitted). In making our determination, this Court must consider:

**STATE v. NGUYEN**

[178 N.C. App. 447 (2006)]

whether defendant was in custody, whether he was deceived, whether his Miranda rights were honored, whether he was held incommunicado, the length of the interrogation, whether there were physical threats or shows of violence, whether promises were made to obtain the confession, the familiarity of the declarant with the criminal justice system, and the mental condition of the declarant.

*Id.* (quoting *State v. Hardy*, 339 N.C. 207, 222, 451 S.E.2d 600, 608 (1994)).

Applying these principles, we determined that the trial court did not err in concluding that defendant's *Miranda* waiver and confession were understandingly, voluntarily, and knowingly made. No evidence appears in the record that tends to show that defendant was deceived; that defendant was held incommunicado; that defendant was interrogated for an unreasonable length of time; or that any promises, physical threats, or shows of violence were made to obtain defendant's consent to waiver or his confession.

Defendant finds fault with the GPD's decision to use Officer Nguyen, a Greensboro police officer, in lieu of a certified Vietnamese interpreter to translate during the police investigation. However, defendant offers no evidence showing that Officer Nguyen was deceitful or acted in an otherwise improper manner during his dealings with defendant. To the contrary, the record tends to show the following: that neither Officer Nguyen nor Officer Lejune carried a firearm into the interview room; that neither officer raised his or her voice during the interview, and; that Officer Nguyen read defendant's entire statement back to defendant in Vietnamese and allowed defendant to make changes to his statement. Additionally, the evidence shows that Officer Nguyen, who was raised in South Vietnam, could communicate clearly with defendant. In summary, while defendant argues that Officer Nguyen was not a "neutral" interpreter because he was a police officer, he offers no legal authority to support his claim of error.

Defendant also asserts that his mental condition at the time of the interview precluded him from understandingly waiving his rights and making his confession. Defendant points to the fact that he had been in an automobile accident and had attempted suicide a few hours before making his statement. However, the trial court found that defendant was offered but declined medical treatment for his minor injuries until he concluded giving his statement. Defendant also

declined food, beverage, and bathroom breaks offered during the interview. Finally, throughout the interview, defendant remained calm and unemotional, not crying or shaking. Based on these findings, defendant's argument is without merit.

In summary, the trial court's findings regarding defendant's motion to suppress support its conclusion that defendant's *Miranda* waiver and statement were made understandingly, knowingly, and voluntarily. *See Cheek,* 351 N.C. at 63, 520 S.E.2d at 554. None of defendant's federal or state constitutional rights were violated by his *Miranda* waiver or confession. *See id.* Defendant's assignments of error relating to the suppression of his confession are, therefore, overruled.

II.

[2] Next, defendant contends that the trial court erred in giving a jury instruction that limited the purpose of evidence introduced regarding defendant's prior bad acts.

Defendant's expert witness, Dr. Schaefer, testified that based on his interviews with defendant and information contained in various reports, defendant was not able to form specific intent to kill Thu. On cross-examination, however, Dr. Schaefer admitted that if defendant had ever hit his wife, such an act might signify an antisocial personality disorder, a condition which he did not originally diagnose. Without objection from defense counsel, the State questioned Dr. Schaefer about details from reports he had reviewed prior to reaching his conclusions regarding defendant's mental state. The State pointed to four instances in which persons familiar with defendant reported that defendant had threatened or physically assaulted Thu. Dr. Schaefer admitted that he did not perform personal interviews with any of the persons mentioned in the reports to ascertain whether the reported statements might be true; however, Dr. Schaefer admitted that if they were, then his diagnosis might change.

After cross-examining Dr. Schaefer, the State moved to call the persons who gave statements to testify at trial. Defendant objected to calling these witnesses, arguing that doing so would not help to prove any "substantive" facts. The judge refused to allow the testimony as evidence under Rule 403 but did not explain the specific reasoning behind his decision.

The relevant part of the contested jury instruction read as follows:

Evidence has been received that may tend to show that on earlier occasions, the defendant slapped the victim; or the defendant stated that he would kill the victim, and just go to prison; or that the victim had a bruise on the back of her neck and said the defendant had hit her; or that the victim stated that the defendant tried to strangle her and hit her head against the wall, after she fainted. This evidence was received solely for the purpose of showing that the defendant had the intent, which is a necessary element of the crime charged in this case.

Defendant argues that the prior acts instructed on were not introduced as competent evidence before the jury. However, the questions by the prosecutor to Dr. Schaefer regarding statements of defendant's prior bad acts were within the proper scope of cross-examination of an expert witness.

Our Supreme Court has consistently stated that:

North Carolina Rules of Evidence permit broad cross-examination of expert witnesses. N.C. Gen. Stat. § 8C-1, Rule 611(b) (1992). The State is permitted to question an expert to obtain further details with regard to his testimony on direct examination, to impeach the witness or attack his credibility, or to elicit new and different evidence relevant to the case as a whole. " 'The largest possible scope should be given,' and 'almost any question' may be put 'to test the value of his testimony.' " 1 Henry Brandis, Jr., Brandis on North Carolina Evidence § 42 (3d ed. 1988) (footnotes omitted) (citations omitted).

*State v. Gregory*, 340 N.C. 365, 410, 459 S.E.2d 638, 663-64 (1995) (quoting *State v. Bacon*, 337 N.C. 66, 88, 446 S.E.2d 542, 553 (1994), *cert. denied*, 513 U.S. 1159, 130 L. Ed. 2d 1083 (1995)). The Court in *Gregory* concluded that the prosecutor's questions regarding the defense expert's nonreliance on certain statements were admissible to impeach his credibility. *Gregory*, 340 N.C. at 410, 459 S.E.2d at 664; *see also State v. Morganherring*, 350 N.C. 701, 728-29, 517 S.E.2d 622, 638 (1999) ("The degree of [the expert's] familiarity with the sources upon which he based his opinion is certainly relevant as to the weight and credibility the jury should give to [the expert's] testimony.").

Here, the prosecutor called into question whether Dr. Schaefer adequately considered certain recorded statements in diagnosing defendant. The impeachment of testimony given by Dr. Schaefer on direct examination was within the broad scope of cross-examination

allowed by our courts. *See Gregory*, 340 N.C. at 409-10, 459 S.E.2d at 663-64.

Defendant also argues that the challenged jury instruction referenced evidence that the court had previously excluded as prejudicial. Specifically, defendant contends that the trial court refused to allow the State to call persons who made statements to testify because their testimony would have been inadmissible. This argument is without merit, as the evidence of defendant's prior bad acts was admissible under Rule 404(b).

While evidence of a person's character or a trait of his character is generally not admissible, evidence of other wrongs or acts may be admissible for the purpose of proving intent. *See* N.C. Gen. Stat. § 8C-1, Rule 404(b) (2005); *see also State v. Scott*, 343 N.C. 313, 331, 471 S.E.2d 605, 616 (1996) (concluding that testimony about defendant's violent acts towards victim was admissible under Rule 404(b) to prove intent, malice, premeditation, and deliberation); *State v. Haskins*, 104 N.C. App. 675, 679, 411 S.E.2d 376, 380 (1991). Here, defendant offered Dr. Schaefer's testimony to show that defendant was unable to form the specific intent to kill Thu. To prove the disputed issue of defendant's intent to kill, the State elicited testimony on defendant's prior misconduct toward his wife. Dr. Schaeffer's testimony regarding the statements of defendant's prior bad acts was properly admitted under Rule 404(b). *See Scott*, 343 N.C. at 331, 471 S.E.2d at 616; *State v. Syriani*, 333 N.C. 350, 376-78, 428 S.E.2d 118, 132, *cert. denied*, 510 U.S. 948, 126 L. Ed. 2d 341 (1993).

Because Dr. Schaefer's testimony regarding certain statements was properly admitted as evidence of defendant's intent, we find no error in giving a jury instruction limiting Dr. Schaefer's testimony to that very purpose. In fact, in overruling this assignment of error, we note that the challenged limiting instruction likely proved favorable to defendant. *See Hyatt*, 355 N.C. at 662, 566 S.E.2d at 74-75 (stating that the trial court guarded against prejudice by giving limiting instruction regarding permissible uses of Rule 404(b)).

III.

[3] Next, defendant contends that the trial court erred in allowing the prosecutor to make statements about certain evidence during his closing statements. The evidence in question concerns Dr. Schaeffer's testimony on prior bad acts performed by defendant and statements by witnesses to these alleged acts.

In his closing argument, the prosecutor made the following remarks, to which defendant assigns error:

> What kind of a man slaps his wife? Keep going. What kind of a man tells his wife that he's going to just kill her and go to prison? He told that to Hang Doan, his sister. Hang Doan could have testified . . . . What kind of man hits his wife on the back of the neck and leaves bruises? Deborah Bettini could have told you about that.

Defense counsel did not object when these remarks were made by the prosecutor. In fact, before the prosecutor's closing remarks, defense counsel told the jury:

> Dr. Schaefer testified that my client, Long Nguyen, slapped his wife on one occasion. . . . Dr. Schaefer said he read [that defendant had slapped his wife] in the report. Dr. Schaefer also mentioned the fact that one of Mr. Nguyen's . . . wife's coworkers saw bruises on Mr. Nguyen's wife. Dr. Schaefer testified to that. He wasn't trying to hide that from you.

Where, as here, a defendant fails to timely object to the prosecution's closing argument, this Court must determine whether the argument was so grossly improper that the trial court erred in failing to intervene *ex mero motu. State v. Walters*, 357 N.C. 68, 101, 558 S.E.2d 344, 364 (2003); *State v. Jones*, 355 N.C. 117, 133, 558 S.E.2d 97, 107 (2002). As a general rule, "counsel are given wide latitude in arguments to the jury and are permitted to argue the evidence that has been presented and all reasonable inferences that can be drawn from that evidence." *Jones*, 355 N.C. at 128, 558 S.E.2d at 105. To constitute reversible error:

> the prosecutor's remarks must be both improper and prejudicial. Improper remarks are those calculated to lead the jury astray. Such comments include references to matters outside the record . . . . Improper remarks may be prejudicial either because of their individual stigma or because of the general tenor of the argument as a whole.

*Id.* at 133, 558 S.E.2d at 107-08. It is commonly recognized that it is *not* improper for the prosecutor to comment on a defendant's failure to produce witnesses. *See, e.g., State v. Ward*, 354 N.C. 231, 262, 555 S.E.2d 251, 271 (2001); *State v. Skeels*, 346 N.C. 147, 153, 484 S.E.2d 390, 393 (1997).

A review of the record reveals that the prosecutor's remarks were not improper. Defendant first argues that the prosecutor's closing argument referenced facts outside the evidence. In closing, the prosecution referenced statements made by certain persons regarding defendant's prior acts. But these statements were properly admitted as impeachment of Dr. Schaefer's conclusions regarding defendant's mental state during the killing. In fact, defense counsel referred to these statements during her own closing argument. Therefore, these statements were not outside the record; rather, they represented evidence presented at trial. *See Bacon*, 337 N.C. at 93, 446 S.E.2d at 555-56 (concluding no error in overruling defense counsel's objection where prosecutor's argument was "based on testimony by the defendant's own witness . . . during cross-examination.")

Defendant next urges this Court to find the prosecutor's statements grossly improper because the trial judge denied the State's request to allow the persons who gave statements to testify. While relevant evidence may be excluded under Rule 403 due to the danger of unfair prejudice, such evidence may also be excluded because of considerations such as "undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2005). Although the trial court did not state its reason(s) for refusing to allow the persons who made statements to testify, the court could have concluded that such testimony would have merely wasted time. Defendant's contention that this evidence was necessarily prejudicial is unpersuasive.

It was not improper for the prosecutor to call to the attention of the jury the fact that defendant chose not to have the persons who made statements about defendant testify at trial.[4] *See Ward*, 354 N.C. at 261-62, 555 S.E.2d at 271. We hold that the prosecutor's statements were not grossly improper and the trial court's failure to intervene *ex mero motu* was not error.

### IV.

**[4]** Defendant lastly contends that, as a citizen of a foreign country, he was entitled pursuant to Article 36 of the Vienna Convention on Consular Relations (the Vienna Convention) to have his consulate notified upon his arrest. This contention is without merit.

---

4. We note that it is unclear whether or not the prosecution's comments were in fact meant for this purpose. The prosecutor's closing comments may have simply been a final attempt to impeach Dr. Schaefer's testimony.

Article 36 of the Vienna Convention states that, upon the arrest of a foreign national:

> [United States] authorities . . . shall, without delay, inform the consular post of the [foreign State] if . . . a national of that State is arrested or committed to prison or to custody pending trial or is detained in any other manner. Any communication addressed to the consular post by the person arrested . . . shall also be forwarded by the said authorities without delay. The said authorities shall inform the person concerned without delay of his rights under this sub-paragraph[.]

*done at Vienna* April 24, 1963, 21 U.S.T. 77, 100-01, 1969 U.S.T. LEXIS 284, 28-29. However, the applicability of the Vienna Convention to state court proceedings is often limited because while "states may have an obligation . . . to comply with the provisions of the Vienna Convention, the Supremacy Clause [of the United States Constitution] does not convert violations of treaty provisions . . . into violations of *constitutional* rights." *Murphy v. Netherland*, 116 F.3d 97, 100 (4th Cir. 1997) (emphasis in original).

Here, we need not reach defendant's Vienna Convention claim on its merits because defendant failed to raise this claim in his written motion to suppress, during the suppression hearing, or at any time during the trial proceedings. As a result, defendant has waived his right to appeal this issue to our Court. *See State v. Escoto*, 162 N.C. App. 419, 430, 590 S.E.2d 898, 906 ("Defendant's final argument is based on the fact that defendant was not advised of his rights under the Vienna Convention upon his arrest. The record contains no evidence that defendant presented this issue to the trial court and the question is therefore not properly before this Court."), *disc. review denied*, 358 N.C. 378, 598 S.E.2d 138 (2004).

Defendant alternatively contends that defense counsel's failure to move to have his confession suppressed on Vienna Convention grounds constitutes ineffective assistance of counsel.

To prevail on a claim of ineffective assistance of counsel,

> a defendant must first show that his counsel's performance was deficient and then that counsel's deficient performance prejudiced his defense. . . . Generally, to establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*State v. Allen,* 360 N.C. 297, 316, 626 S.E.2d 271, 286 (2006) (internal quotations and citations omitted); *see also Strickland v. Washington,* 466 U.S. 668, 687-94, 80 L. Ed. 2d 674, 693 (1984).

Whether or not defense counsel's failure to raise the Vienna Convention issue constituted a "deficient performance," defendant's ineffective assistance of counsel claim must fail because defendant has not shown prejudice. First, defendant has failed to establish prejudice from the alleged violation because he is unable to explain how contacting the Vietnamese consulate would have changed the outcome of his case. *See Murphy,* 116 F.3d at 100-01. Defendant was advised of his right to an attorney and voluntarily waived that right. Even assuming that defendant would have contacted his consulate for assistance if notified of this right, it is unclear what assistance, if any, the Vietnamese consulate would have provided to defendant.

Second, even without defendant's confession to police, the physical evidence and eyewitness evidence presented during trial overwhelmingly supports the jury's verdict. In summary, the defendant has not met the burden of showing a reasonable probability that, but for defense counsel's failure to raise the Vienna Convention issue at trial, the result of his proceedings would have been different. *See Allen,* 360 N.C. at 316, 626 S.E.2d at 286. This assignment of error is overruled.

No error.

Judges STEELMAN and JACKSON concur.