IN THE COURT OF APPEALS OF NORTH CAROLINA

 2022-NCCOA-261

 No. COA20-766

 Filed 19 April 2022

 Lee County, No. 09CRS001227

 STATE OF NORTH CAROLINA

 v.

 JUAN CARLOS BENITEZ, Defendant.

 Appeal by defendant from judgment entered on or about 20 May 2013 by Judge

 Douglas B. Sasser and order entered on or about 8 August 2019 by Judge C. Winston

 Gilchrist in Superior Court, Lee County. Heard in the Court of Appeals 16 November

 2021.

 Attorney General Joshua H. Stein, by Assistant Attorney General Michael T.
 Henry, for the State.

 Appellate Defender Glenn Gerding, by Assistant Appellate Defender Anne M.
 Gomez, for defendant-appellant.

 STROUD, Chief Judge.

¶1 Defendant appeals a trial court order entered upon remand which denied his

 motions to suppress. On remand, the trial court properly conducted review as

 directed by State v. Benitez, 258 N.C. App. 491, 813 S.E.2d 268 (2018), addressed the

 totality of the circumstances relevant to defendant’s statements to law enforcement,

 and concluded defendant knowingly and voluntarily waived his Miranda rights. We
 STATE V. BENITEZ

 2022-NCCOA-261

 Opinion of the Court

 therefore affirm the trial court’s order denying defendant’s motions to suppress.

 I. Procedural Background

¶2 This case has a lengthy procedural history with the trial court, this Court, and

 the Supreme Court. See State v. Benitez, 258 N.C. App. 491, 813 S.E.2d 268 (2018)

 (“Benitez I”).1

 A. Prior Benitez I Appeal

¶3 The procedural background in this case was provided in Benitez I:

 After the denial of his motions to suppress,
 defendant pled guilty to first degree murder; he appealed
 and also filed a motion for appropriate relief with this
 Court. In 2014, this Court allowed defendant’s motion for
 appropriate relief, reversed the denial of his motions to
 suppress, and vacated his judgment. The State petitioned
 the Supreme Court for discretionary review and ultimately
 that Court vacated this Court’s opinion and ordered that
 defendant’s motion for appropriate relief be remanded for
 consideration by the trial court. On remand, the trial court
 denied defendant’s motion for appropriate relief.
 Defendant now appeals the denial of his motion for
 appropriate relief.

 1 We note that there was also a State v. Benitez, 810 S.E.2d 781 (N.C. App. 2018), opinion

 filed on 6 February 2018. The 6 February 2018 opinion was withdrawn prior to the issuance
 of the Court’s mandate by order entered 19 February 2018, and replaced with State v.
 Benitez, 258 N.C. App. 491, 813 S.E.2d 268 (2018), filed on 20 March 2018. It is unclear to
 this Court why the withdrawn February 2018 opinion was published in West’s South Eastern
 Reporter. Regardless, the March 2018 opinion is the official opinion of this Court as “[t]he
 North Carolina Reports and the North Carolina Court of Appeals Reports remain the official
 reports of the opinions of the Supreme Court of North Carolina and of the North Carolina
 Court of Appeals, respectively.” Administrative Order Concerning the Formatting of
 Opinions and the Adoption of a Universal Citation Form, 373 N.C. 605 (2019).
 STATE V. BENITEZ

 2022-NCCOA-261

 Opinion of the Court

 Id. at 492, 813 S.E.2d at 270.

¶4 In Benitez I, we addressed defendant’s motion for appropriate relief (“MAR”)

 and motions to suppress. See id., 258 N.C. App. 491, 813 S.E.2d 268. As to the MAR,

 we affirmed the trial court’s ruling to deny that motion. See id. As to the motions to

 suppress, we remanded:

 Because the trial court failed to address the key
 considerations in determining whether defendant had
 knowingly and intelligently waived his rights during police
 interrogation, we must remand the order denying
 defendant’s motion to suppress for further findings of fact.
 We note that both the State and defendant have already
 presented evidence regarding these issues, but if either the
 State or defendant should request that the trial court allow
 presentation of further evidence or argument on remand,
 the trial court may in its sole discretion either allow or deny
 this request.

 Id. at 515, 813 S.E.2d at 283.

 B. Trial Court Order Upon Remand from Benitez I

¶5 Thus, on or about 8 August 2019, the trial court again considered defendant’s

 motions to suppress. The trial court noted that “[n]either the State nor the

 [d]efendant chose to submit additional evidence[.]” Ultimately, regardless of the

 extensive procedural history of this case, the only issue presently before this Court is

 the 2019 order denying defendant’s motions to suppress, which was based solely upon

 evidence from prior hearings, and entered on remand for the trial court to address
 STATE V. BENITEZ

 2022-NCCOA-261

 Opinion of the Court

 “the key considerations in determining whether defendant had knowingly and

 intelligently waived his rights during police interrogation[.]” Id.

¶6 The trial court began its order by incorporating two findings of fact from its

 prior orders and evidence:

 1. This Court’s prior order entitled, “ORDER
 DENYING MOTIONS TO SUPRESS STATEMENT”,
 signed on December 13, 2012 is hereby incorporated by
 reference in its entirety.

 2. Evidence admitted at the hearing on Defendant’s
 capacity to proceed, held on May 2nd and 3rd 2012, was
 stipulated into evidence by the parties at the October 4,
 2012 hearing on Defendant’s Motion to Suppress
 Statement.

¶7 The trial court then made findings of fact regarding the circumstances of

 defendant’s statement to law enforcement:

 1. Defendant was in custody at the Lee County
 Sheriff’s Office when he made his statement through the
 interpreter with his uncle present.

 2. The length of Defendant’s interrogation was just
 under two and one half (2 ½) hours in that he was advised
 of his rights under NCGS § 7B-2101 at 10:30 p.m. on
 August 1, 2007 and his typed, signed statement was
 completed at 12:56 a.m. on August 2, 2007.

 3. There was no credible evidence that the Defendant
 was tired or fatigued during the time that he was
 questioned and made his statement.

 4. In the making and reviewing of his statement, the
 Defendant related a consistent version of events.
 STATE V. BENITEZ

 2022-NCCOA-261

 Opinion of the Court

 5. The interpreter, Celinda Carney, had experience in
 working with children at the local domestic abuse shelter.

 6. Defendant understood all questions asked and
 statements made to him. Defendant responded coherently
 to all questions. The interpreter present during
 Defendant’s interrogation accurately translated the
 juvenile Miranda rights given into Spanish for Defendant.
 The interpreter accurately translated the questions asked
 of Defendant as well as all of Defendant’s statements. The
 interpreter experienced no difficulty in translating for
 Defendant.

 7. Defendant was never threatened, coerced or
 otherwise harassed and all conversations were done in a
 conversational tone without yelling.

¶8 The trial court then made several findings of fact about defendant’s

 background, education, and experience:

 8. Defendant was born in El Salvador, Central America
 and came to the United States in 2005. Defendant was
 transported to the United States at the behest of his family
 by a “coyote”, a person hired to smuggle undocumented
 immigrants into the United States. Defendant experienced
 physical abuse while living in El Salvador. Defendant
 reported receiving blows to the head in El Salvador.

 9. At the time the Defendant gave his statement, while
 still in his thirteenth (13th) chronological year, he was
 actually just two (2) months and a day shy of his fourteenth
 (14th) birthday.

 10. After coming to the United States, the Defendant
 had been enrolled in and attending public school in the
 English as a Second Language program in Lee County,
 North Carolina for at least one (1) year.
 STATE V. BENITEZ

 2022-NCCOA-261

 Opinion of the Court

11. In a school setting for ESL (English as a Second
Language), prior to interrogation, Defendant responded to
simple directions with appropriate actions.

12. Two (2) months prior to making his statement the
Defendant had been promoted to the eighth (8th) grade, a
grade level appropriate for his age. In the school year
before this incident, Defendant achieved grades of 70 or
above in Language Arts 7, Math 7, Art, Technology and
Health and P.E. Notes for one of Defendant’s classes
contained in Defendant’s school records for 2007, the year
of this offense, state that “This student does not pay
attention during class.” During the 2006-2007 school year,
Defendant exhibited poor disciplinary behavior, such as
disrespecting his teachers, use of profanity, calling a
female student a bitch, touching a female student’s
buttocks, tripping another student and skipping class.
Defendant was placed in in-school suspension four times
and out of school suspensions were imposed three times
during the 2006-2007 school year. Defendant’s conduct
likely affected his school performance to some degree.

13. Defendant reported to Dr. Bartholomew that he had
been “caught in a stolen car with a friend” in a prior
incident which occurred before his arrest for first degree
murder in the case at bar and that he had received criminal
charges as a result. However, there is no credible evidence
before the court that Defendant was advised of his Miranda
rights for any prior incidents.

14. Defendant was riding a bicycle alone on or near a
street outside the mobile home park where he lived when
he was first encountered by law enforcement on August 1,
2007.

15. Defendant has exhibited manipulative behavior that
was goal oriented and rewarding to him.
 STATE V. BENITEZ

 2022-NCCOA-261

 Opinion of the Court

¶9 The trial court then made findings regarding defendant’s mental state, mental

 capabilities, and his intelligence level:

 16. Defendant had Intelligence Quotient (IQ) scores of
 44, 60 and 65 from a number of IQ tests and screenings.
 However, the score of 44 was inconsistent with the other
 evidence of Defendant’s intellectual or cognitive abilities
 and did not reflect Defendant’s actual level of intelligence
 or intellectual function. Defendant’s full scale IQ score on
 the Wechsler Adult Intelligence scale Mexican version
 (administered in Spanish) was 60. No examiner conducted
 a credible formal assessment of Defendant’s adaptive
 skills.

 17. Dr. Antonio Puente, Ph. D., an expert witness called
 on behalf of Defendant, opined that Defendant was “mildly
 retarded”.

 18. The totality of the credible evidence does not support
 a finding that Defendant suffered from significant
 limitations in adaptive functioning in two or more adaptive
 skill areas. The totality of the credible evidence does not
 support a finding that Defendant had significant
 limitations in communication, self-care, home living, social
 skills, community use, self-direction, health and safety,
 functional academics, leisure skills or work skills at the
 time he was questioned by law enforcement.

 19. Dr. Richard Rumer, Ph. D., who was recognized as
 an expert in forensic and clinical psychology, credibly
 testified that Defendant did not “function in the extremely
 low range of functioning.” Dr. Rumer credibly testified that
 Defendant was not “mentally retarded” or intellectually
 disabled. Among other things, Defendant scored an 84, at
 the 17th percentile for his chronological peers, on a subtest
 of non-verbal intelligence.

 20. The trial court carefully observed the demeanor of
 STATE V. BENITEZ

 2022-NCCOA-261

 Opinion of the Court

Dr. Puente and considered the time frame and context of
his evaluations and testing. Some of Dr. Puente’s
testimony on behalf of Defendant was exaggerated or
inaccurate. His opinions lacked credibility.

21. Among other things, Dr. Puente testified that the
results of his testing of Defendant reflected Defendant
lacked “the ability to understand English at all.” This
opinion was contradictory to credible evidence regarding
Defendant’s ability to understand some English at the time
of his arrest. Dr. Puente’s opinion was not credible.

22. Among other things, Dr. Puente stated that
Defendant’s “understanding of Spanish was very
rudimentary”, that his comprehension of Spanish, the
Defendant’s native tongue, “was closer to about pre-
kindergarten levels” and that “he barely knew Spanish”.
These conclusions by Dr. Puente were contradicted by the
totality of the credible evidence presented. These
conclusions by Dr. Puente were not credible.

23. Dr. Puente’s own testimony showed that by one
measure, Defendant's spoken vocabulary, his ability to say
words, was as high as fifteen years of age.

24. Defendant exhibited “varied” and “less than
optimal” effort during the testing done by Dr. Puente.
Defendant also exhibited inconsistent effort during testing
performed by Dr. Rumer, one of the State’s experts. For
example, during testing Defendant sometimes answered
more difficult items correctly, only to answer easier test
questions incorrectly. Defendant’s less than optimal effort
during testing contributed to lowering his scores on the
tests administered by the experts examining him.

25. There is no credible evidence that Defendant
experienced or exhibited delusions, hallucinations or
distractions by internal stimuli such as psychotic ideas or
thought disorder. Further, Defendant was not incoherent
 STATE V. BENITEZ

 2022-NCCOA-261

 Opinion of the Court

or disoriented.

26. There was no credible evidence that at the time the
Defendant made his statement he was under the influence
of any impairing substance. Defendant was prescribed
Zoloft, an antidepressant, months after his interrogation
and after being held in secure custody on a first degree
murder charge for a substantial period of time. There is no
credible evidence before the court the Defendant suffered
from depression or any other mental health disorder not
otherwise specifically addressed in these findings at the
time of his interrogation.

27. David Bartholomew, a psychiatrist and medical
doctor at Central Regional Hospital, testified as an expert
in forensic psychiatry with a subspecialty in child
adolescent psychiatry. Dr. Bartholomew examined
Defendant in 2008. Bartholomew focused on Defendant’s
understanding of the criminal legal process and the roles
of various participants in that process. In response to
Bartholomew’s questioning Defendant, then at the age of
fifteen, knew that he was charged with first degree murder,
that he was accused of killing someone, that this was a
serious charge and that he could receive life in prison for
murder if treated as an adult. He understood that he could
receive less severe punishment if treated as a juvenile.
Defendant knew the difference between a person who was
“guilty” and one who was “not guilty”. Defendant
understood the role of witnesses in trials. He understood
that various forms of evidence might support opposing
arguments in a case. He knew that the district attorney
presented information against a defendant, and that
Defendant’s lawyer’s job was to present information on his
behalf and to assist Defendant in his case. Defendant
understood that a defendant can potentially provide
information to law enforcement in an effort to help
themselves. After some education by Dr. Bartholomew,
Defendant articulated the basic concept of plea bargaining
(i.e., receiving a reduced sentence in exchange for pleading
 STATE V. BENITEZ

 2022-NCCOA-261

 Opinion of the Court

 guilty). He comprehended that the role of a judge is to be
 neutral between the defendant and the prosecution.
 Defendant’s understanding of these legal concepts was
 demonstrated in his interview with Dr. Bartholomew after
 Defendant had been in secure custody facing the charge at
 bar for a year and a half, [sic] does not necessarily reflect
 Defendant’s level of knowledge at the time of his
 interrogation and will not be used by the court as evidence
 of Defendant’s legal sophistication or experience at the
 time Defendant was advised of his Miranda rights.
 However, Defendant’s ability to understand important
 aspects of the legal process provides some credible and
 relevant evidence of Defendant’s general intelligence level.

¶ 10 Lastly, the trial court made findings of fact regarding defendant’s capacity to

 understand the Miranda warning:

 27.[2] Defendant had at least a general ability to recall, or
 memory of, especially important events including who was
 present at such events.

 28. Defendant demonstrated an ability to recall
 information between interview sessions six (6) days apart
 conducted by Dr. Bartholomew.

 29. Defendant’s ability to concentrate and pay attention
 was generally within normal limits.

 30. Defendant had the ability to develop complex
 themes and switch concepts.

 3l. There is no credible evidence from any form of
 medical imaging, such as a CAT scan, that the Defendant
 suffers from any organic brain injury.

 32. Dr. Puente’s opinion that the Defendant probably

 2 There are two findings of fact numbered as 27.
 STATE V. BENITEZ

 2022-NCCOA-261

 Opinion of the Court

did not understand his Miranda Warnings because of his
not understanding the legal system in the United States;
limited appreciation of the words used in either English or
Spanish, and limited cognitive abilities is not credible.

33. Defendant’s mental state, illness or defect did not
impair the Defendant’s ability to understand the warnings
given or the nature of his Miranda Rights pursuant to
NCGS § 7B-2101.

34. Defendant evidenced an ability to be evasive and
appreciative of his position in relation to legal authority
and jeopardy by initially denying to Sheriff Carter and
Detective Holly his true identity, providing a false name
and later taking them to a wrong address as his home. All
of these conversations, including later when the Defendant
volunteered to show Detective Holly where Defendant had
put the gun being sought, were in English. Defendant also
disposed of the murder weapon outside his uncle’s house.
Defendant led Sheriff Carter and Detective Holly directly
to the gun he had hidden 20-30 feet in the woods and did
so without confusion. Even before being advised of his
rights, the Defendant’s conduct showed he understood that
speaking to the police could have negative consequences.
Defendant sought to manipulate and mislead law
enforcement. Defendant possessed and exhibited the
mental capacity to understand the meaning and effect of
statements made by him to the police.

35. Defendant appeared to exhibit some understanding
of English by starting to answer before the interpreter was
finished translating some of the questions during his
interrogation.

36. During questioning Defendant stated he would tell
the interpreter what happened but would not tell Detective
Clint Babb directly. Defendant was told, and understood,
that whatever he said to the interpreter would be repeated
to Detective Babb by the interpreter. Defendant chose to
 STATE V. BENITEZ

 2022-NCCOA-261

 Opinion of the Court

 make a statement to the interpreter without anyone other
 than the interpreter present. Defendant understood he was
 not required to speak directly to law enforcement officers,
 or speak to anyone, if he did not wish to do so. Defendant
 later also gave a complete statement to Detective Babb.

 37. The findings of fact above describe Defendant’s
 circumstances and abilities at the time of his interrogation
 at age 13, and not at a later time.

 (Emphasis in original.)

¶ 11 The trial court then concluded,

 1. At the time of his interrogation at age 13, Defendant
 suffered from a mental defect in the form of a below
 average or borderline intelligence. However, the credible
 evidence does not support the conclusion or finding that
 Defendant was “intellectually impaired” or “mentally
 retarded”.

 2. Defendant’s mental state, illness or defect did not
 impair his ability to make a knowing, voluntary and
 intelligent waiver of his rights pursuant to NCGS 7B-2101.
 Likewise, the Defendant’s mental state, illness or defect
 did not prevent him from understanding these rights or
 from appreciating the consequences of waiving these
 rights.

 3. Defendant had the capacity, at age 13 and at the
 time of his encounter with law enforcement in this case, to
 understand the warnings given to him, the nature of his
 Fifth Amendment and statutory rights, and the
 consequences of waiving his rights. Defendant in fact
 understood each and all of these rights and warnings and
 the consequences of waiving them. Defendant made a
 rational and voluntary decision to waive each and all of his
 rights.
 STATE V. BENITEZ

 2022-NCCOA-261

 Opinion of the Court

4. Even if Defendant was “mentally retarded” or
“intellectually impaired”, as these terms are defined by
statute or in the field of psychology or psychiatry,
Defendant nevertheless in fact had the capacity, at the
time of his interrogation, to understand the warnings given
to him by law enforcement, the nature of these rights and
the consequences of waiving his rights, and Defendant still
in fact understood these rights, their nature and the
consequences of waiving them and in fact made a knowing,
intelligent and voluntary waiver of his rights.

5. Considering the totality of the circumstances,
including Defendant’s mental defect, age, experience,
education, background and intelligence, the Defendant
made a knowing, voluntary, willing, understanding and
intelligent waiver of his properly advised juvenile rights
under NCGS § 7B-2101.

6. Under the totality of the circumstances, Defendant
made a knowing, intelligent, willing, understanding and
voluntary waiver of his Miranda and juvenile rights under
the fifth, sixth and fourteenth amendments to the U.S.
Constitution, and of his rights under Article l, sections 19
and 23 of the N.C. Constitution. There were no substantial
violations of Defendant’s rights under the North Carolina
General Statutes.

7. The. State has met its burden of proof in
establishing each of the findings and conclusions set forth
above.

8. The statements made by Defendant were knowingly,
willingly, freely, intelligently, voluntarily and
understandingly made.

9. The parties had proper notice of the hearing of this
matter, and the court has jurisdiction over the subject
matter and the parties.
 STATE V. BENITEZ

 2022-NCCOA-261

 Opinion of the Court

 Ultimately, the trial court again denied defendant’s motions to suppress. Defendant

 appeals.

 II. Understanding Miranda Warnings

¶ 12 Defendant first contends that “where no expert opined that . . . [he] could

 understand Miranda warning, the trial court erred by finding that [he] understood.”

 (Capitalization altered.) Defendant contends the trial court should have allowed his

 motions to suppress.

 It is well established that the standard of review in
 evaluating a trial court’s ruling on a motion to suppress is
 that the trial court’s findings of fact are conclusive on
 appeal if supported by competent evidence, even if the
 evidence is conflicting. In addition, findings of fact to which
 defendant failed to assign error are binding on appeal.
 Once this Court concludes that the trial court’s findings of
 fact are supported by the evidence, then this Court’s next
 task is to determine whether the trial court’s conclusions
 of law are supported by the findings. The trial court’s
 conclusions of law are reviewed de novo and must be legally
 correct.

 State v. Campbell, 188 N.C. App. 701, 704, 656 S.E.2d 721, 724 (2008) (citations,

 quotation marks, and brackets omitted).

¶ 13 We specifically addressed the denial of defendant’s motion to suppress, as a

 juvenile, in Benitez I,

 North Carolina General Statute § 7B-2101(d)
 includes an additional requirement before evidence of a
 statement by a juvenile may be admitted as evidence:
 “Before admitting into evidence any statement resulting
 STATE V. BENITEZ

 2022-NCCOA-261

 Opinion of the Court

from custodial interrogation, the court shall find that the
juvenile knowingly, willingly, and understandingly waived
the juvenile’s rights.” N.C. Gen. Stat. § 7B-2101(d) (2007).
 To determine if a defendant has “knowingly and
voluntarily” waived his right to remain silent, the trial
court must consider the totality of the circumstances of the
interrogation, and for juveniles, this analysis includes the
“juvenile’s age, experience, education, background, and
intelligence, and [evaluation] into whether he has the
capacity to understand the warnings given him, the nature
of his Fifth Amendment rights, and the consequences of
waiving those rights”:
 [T]he determination whether statements
 obtained during custodial interrogation are
 admissible against the accused is to be made
 upon an inquiry into the totality of the
 circumstances surrounding the interrogation,
 to ascertain whether the accused in fact
 knowingly and voluntarily decided to forgo his
 rights to remain silent and to have the
 assistance of counsel.
 This totality-of-the-circumstances
 approach is adequate to determine whether
 there has been a waiver even where
 interrogation of juveniles is involved. We
 discern no persuasive reasons why any other
 approach is required where the question is
 whether a juvenile has waived his rights, as
 opposed to whether an adult has done so. The
 totality approach permits—indeed, it
 mandates—inquiry into all the circumstances
 surrounding the interrogation. This includes
 evaluation of the juvenile’s age, experience,
 education, background, and intelligence, and
 into whether he has the capacity to
 understand the warnings given him, the
 nature of his Fifth Amendment rights, and
 the consequences of waiving those rights.
 STATE V. BENITEZ

 2022-NCCOA-261

 Opinion of the Court

Benitez I, 258 N.C. App. 491, 509-510, 813 S.E.2d 268, 279-80 (alterations in original).

Ultimately, in Benitez I, this Court remanded for further findings of fact regarding

the totality of the circumstances surrounding defendant’s understanding of the

Miranda warning provided to him. See id. at 515, 813 S.E.2d at 283. Yet even at

the time of Benitez I, approximately four years ago, we noted:

 This case has gone on for a long time. When it
 started, defendant was a 13 year old child. When defendant
 entered his plea, he was nearing his 20th birthday. At the
 time of the filing of this opinion, defendant is 24 years old.
 Nonetheless, we must remand for the trial court to make
 additional findings of fact addressing whether defendant's
 waiver of rights at age 13 was knowing and intelligently
 made, taking into account the evidence regarding
 defendant’s “experience, education, background, and
 intelligence” and evaluation of “whether he has the
 capacity to understand the warnings given to him, the
 nature of his Fifth Amendment rights, and the
 consequences of waiving these rights.” Id. These
 considerations under Fare are not technicalities but are
 essential to any conclusion of whether defendant
 knowingly and intelligently waived his right to remain
 silent. See generally id. The trial court’s order did not
 properly address the constitutional arguments before it in
 defendant’s motion to suppress, and thus remand is
 necessary at this late stage in defendant’s ongoing criminal
 proceedings. Certainly the trial court may consider later
 evaluations and events in its analysis of defendant’s
 knowing and intelligent waiver at age 13 but should take
 care not to rely too much on hindsight. Hindsight is reputed
 to be 20/20, but hindsight may also focus on what it is
 looking for to the exclusion of things it may not wish to see.
 The trial court’s focus must be on the relevant time period
 and defendant’s circumstances at that time as a 13 year old
 boy who required a translator and who suffered from a
 STATE V. BENITEZ

 2022-NCCOA-261

 Opinion of the Court

 “mental illness or defect” and not on the 10 years of
 litigation of this case since that time. The trial court must
 make findings as to defendant’s mental state and capacity
 to understand the Miranda warnings at age 13, including
 the nature of his “mental illness or defect[,]” and the
 impact, if any, this condition had on his ability to make a
 knowing and intelligent waiver. See generally id.

 Id. at 514–15, 813 S.E.2d at 282–83 (alterations in original).

¶ 14 In defendant’s argument he does not directly challenge the trial court’s

 findings of fact but rather contends that the trial court was not in a position to make

 certain findings because it needed specific expert testimony on certain issues. For

 example, the trial court found in finding of fact 18 that

 [t]he totality of the credible evidence does not support a
 finding that Defendant suffered from significant
 limitations in adaptive functioning in two or more adaptive
 skill areas. The totality of the credible evidence does not
 support a finding that Defendant had significant
 limitations in communication, self-care, home living, social
 skills, community use, self-direction, health and safety,
 functional academics, leisure skills or work skills at the
 time he was questioned by law enforcement.

 Defendant contends “[t]he trial court’s conclusion that Juan did not suffer from

 adaptive deficits is unsupported. (FF 18) . . . The trial court was not qualified, on its

 own, to make this determination.” But the trial court did not simply decide on its

 own that defendant does not suffer from adaptive deficits, as defendant frames it, but

 rather found that “[t]he totality of the credible evidence does not support a finding”

 that defendant suffers from adaptive deficits. See generally Kabasan v. Kabasan, 257
 STATE V. BENITEZ

 2022-NCCOA-261

 Opinion of the Court

 N.C. App. 436, 457, 810 S.E.2d 691, 705 (2018) (“Questions of credibility and the

 weight to be accorded the evidence remain in the province of the finder of facts.”

 (citation and quotation marks omitted)). In other words, the trial court did not

 independently determine defendant has no adaptive deficits, but rather considered

 the expert testimony presented by both defendant and the State, determined the

 credibility and weight of the evidence, and found the credible evidence did not support

 defendant’s contentions regarding the extent of his adaptive deficits.

¶ 15 Primarily, defendant’s argument reiterates facts already established in Benitez

 I: defendant was a juvenile; he was from El Salvador; and he had “intellectual

 limitations.” See generally Benitez I, 258 N.C. App. 491, 813 S.E.2d 268. As to a need

 for further expert testimony to support the trial court’s determinations, defendant

 essentially argues that because the trial court had testimony from Dr. Puente that

 defendant did not understand his Miranda rights; the State was required to

 affirmatively establish through expert testimony, that defendant did in fact

 understand his rights and subsequent waiver of them. But defendant essentially

 acknowledges the fallacy of his own argument by correctly noting in his brief, “The

 State is not necessarily required to present expert testimony to prove validity of a

 rights waiver.” Indeed, defendant fails to direct us to any law requiring an expert to

 testify he understood the Miranda warnings; this is a question of law for the trial

 court to address based upon the evidence presented by both sides. See State v.
 STATE V. BENITEZ

 2022-NCCOA-261

 Opinion of the Court

 Nguyen, 178 N.C. App. 447, 452, 632 S.E.2d 197, 201–02 (2006) (“We must now

 determine whether these findings support the trial court’s conclusion that

 defendant’s Miranda waiver was understandingly, voluntarily, and knowingly made.

 The trial court’s conclusion of law that defendant’s statements were voluntarily made

 is a fully reviewable legal question. The court looks at the totality of the

 circumstances of the case in determining whether defendant’s confession was

 voluntary.” (citation, quotation marks, and brackets omitted)).

¶ 16 Whether a defendant knows and understands his rights is a legal question to

 be answered by the trial court. See State v. Hunter, 208 N.C. App. 506, 511, 703

 S.E.2d 776, 780 (2010) (“A trial court’s findings of fact regarding the voluntary nature

 of an inculpatory statement are conclusive on appeal when supported by competent

 evidence. However, a trial court’s determination of the voluntariness of a defendant’s

 statements is a question of law and is fully reviewable on appeal. Conclusions of law

 regarding the admissibility of such statements are reviewed de novo. The standard

 for judging the admissibility of a defendant’s confession is whether it was given

 voluntarily and understandingly. Voluntariness is to be determined from

 consideration of all circumstances surrounding the confession.” (citations and

 quotation marks omitted)).

¶ 17 While defendant focuses heavily on his age in his argument, we note that this

 factor was already addressed by the trial court as noted in Benitez I:
 STATE V. BENITEZ

 2022-NCCOA-261

 Opinion of the Court

 The findings of fact in the motion to suppress do address
 defendant’s age and the circumstances surrounding the
 interrogation, but not defendant’s experience, education,
 background, and intelligence or whether he has the
 capacity to understand the warnings given him, the nature
 of his Fifth Amendment rights, and the consequences of
 waiving those rights.

Benitez I, 258 N.C. App. at 514, 813 S.E.2d at 282 (emphasis in original) (citation,

quotation marks, and brackets omitted). As to defendant’s background, education,

and experience, the trial court found:

 8. Defendant was born in El Salvador, Central America
 and came to the United States in 2005. Defendant was
 transported to the United States at the behest of his family
 by a “coyote”, a person hired to smuggle undocumented
 immigrants into the United States. Defendant experienced
 physical abuse while living in El Salvador. Defendant
 reported receiving blows to the head in El Salvador.

 9. At the time the Defendant gave his statement, while
 still in his thirteenth (13th) chronological year, he was
 actually just two (2) months and a day shy of his fourteenth
 (14th) birthday.

 10. After coming to the United States, the Defendant
 had been enrolled in and attending public school in the
 English as a Second Language program in Lee County,
 North Carolina for at least one (1) year.

 11. In a school setting for ESL (English as a Second
 Language), prior to interrogation, Defendant responded to
 simple directions with appropriate actions.

 12. Two (2) months prior to making his statement the
 Defendant had been promoted to the eighth (8th) grade, a
 grade level appropriate for his age. In the school year
 STATE V. BENITEZ

 2022-NCCOA-261

 Opinion of the Court

 before this incident, Defendant achieved grades of 70 or
 above in Language Arts 7, Math 7, Art, Technology and
 Health and P.E. Notes for one of Defendant’s classes
 contained in Defendant’s school records for 2007, the year
 of this offense, state that “This student does not pay
 attention during class.” During the 2006-2007 school year,
 Defendant exhibited poor disciplinary behavior, such as
 disrespecting his teachers, use of profanity, calling a
 female student a bitch, touching a female student’s
 buttocks, tripping another student and skipping class.
 Defendant was placed in in-school suspension four times
 and out of school suspensions were imposed three times
 during the 2006-2007 school year. Defendant’s conduct
 likely affected his school performance to some degree.

 13. Defendant reported to Dr. Bartholomew that he had
 been “caught in a stolen car with a friend” in a prior
 incident which occurred before his arrest for first degree
 murder in the case at bar and that he had received criminal
 charges as a result. However, there is no credible evidence
 before the court that Defendant was advised of his Miranda
 rights for any prior incidents.

 14. Defendant was riding a bicycle alone on or near a
 street outside the mobile home park where he lived when
 he was first encountered by law enforcement on August 1,
 2007.

 15. Defendant has exhibited manipulative behavior that
 was goal oriented and rewarding to him.

¶ 18 As to defendant’s intelligence level, the trial court made 12 findings of fact

 explaining which expert evidence it deemed credible and how that evidence led to the

 ultimate finding that defendant was intellectually capable of understanding the

 Miranda warnings. Finally, as to defendant’s ability to understand Miranda, the
 STATE V. BENITEZ

 2022-NCCOA-261

 Opinion of the Court

trial court found:

 27. Defendant had at least a general ability to recall, or
 memory of, especially important events including who was
 present at such events.

 28. Defendant demonstrated an ability to recall
 information between interview sessions six (6) days apart
 conducted by Dr. Bartholomew.

 29. Defendant’s ability to concentrate and pay attention
 was generally within normal limits.

 30. Defendant had the ability to develop complex
 themes and switch concepts.

 3l. There is no credible evidence from any form of
 medical imaging, such as a CAT scan, that the Defendant
 suffers from any organic brain injury.

 32. Dr. Puente’s opinion that the Defendant probably
 did not understand his Miranda Warnings because of his
 not understanding the legal system in the United States;
 limited appreciation of the words used in either English or
 Spanish, and limited cognitive abilities is not credible.

 33. Defendant’s mental state, illness or defect did not
 impair the Defendant’s ability to understand the warnings
 given or the nature of his Miranda Rights pursuant to
 NCGS § 7B-2101.

 34. Defendant evidenced an ability to be evasive and
 appreciative of his position in relation to legal authority
 and jeopardy by initially denying to Sheriff Carter and
 Detective Holly his true identity, providing a false name
 and later taking them to a wrong address as his home. All
 of these conversations, including later when the Defendant
 volunteered to show Detective Holly where Defendant had
 put the gun being sought, were in English. Defendant also
 STATE V. BENITEZ

 2022-NCCOA-261

 Opinion of the Court

 disposed of the murder weapon outside his uncle’s house.
 Defendant led Sheriff Carter and Detective Holly directly
 to the gun he had hidden 20-30 feet in the woods and did
 so without confusion. Even before being advised of his
 rights, the Defendant’s conduct showed he understood that
 speaking to the police could have negative consequences.
 Defendant sought to manipulate and mislead law
 enforcement. Defendant possessed and exhibited the
 mental capacity to understand the meaning and effect of
 statements made by him to the police.

 35. Defendant appeared to exhibit some understanding
 of English by starting to answer before the interpreter was
 finished translating some of the questions during his
 interrogation.

 36. During questioning Defendant stated he would tell
 the interpreter what happened but would not tell Detective
 Clint Babb directly. Defendant was told, and understood,
 that whatever he said to the interpreter would be repeated
 to Detective Babb by the interpreter. Defendant chose to
 make a statement to the interpreter without anyone other
 than the interpreter present. Defendant understood he was
 not required to speak directly to law enforcement officers,
 or speak to anyone, if he did not wish to do so. Defendant
 later also gave a complete statement to Detective Babb.

 37. The findings of fact above describe Defendant’s
 circumstances and abilities at the time of his interrogation
 at age 13, and not at a later time.

(Emphasis in original.) Defendant has not substantively challenged any of the

findings of fact, and thus they are binding on appeal. Benitez I, 258 N.C. App. at

510–11, 813 S.E.2d at 280 (“Defendant does not challenge any of the trial court’s

findings of fact in the order denying his motion to suppress, so all of its findings are
 STATE V. BENITEZ

 2022-NCCOA-261

 Opinion of the Court

 binding on appeal. See State v. Osterhoudt, 222 N.C. App. 620, 626, 731 S.E.2d 454,

 458 (2012) (‘Any unchallenged findings of fact are deemed to be supported by

 competent evidence and are binding on appeal.’)”). We conclude the trial court

 followed this Court’s instructions in Benitez I and has addressed “the key

 considerations in determining whether defendant had knowingly and intelligently

 waived his rights during police interrogation[.]” Benitez I, 258 N.C. App. at 510–11,

 813 S.E.2d at 280. Moreover, the trial court did not need further expert testimony,

 as defendant contends, to make these determinations.

¶ 19 Defendant’s only other argument on appeal is that “even if the trial court could

 conclude on its own that . . . [defendant] understood Miranda warnings, the trial court

 still erred.” (Capitalization altered.) Despite framing this issue as an error in the

 conclusions of law, defendant again heavily focuses on the testimony from experts

 noting, “reliance upon the evaluations by Drs. Bartholomew and Rumer was improper

 because competency to proceed is very different than understanding one’s rights.”

 But once again, defendant acknowledges, “the evaluations took place long after the

 interrogation. The trial court realized this greatly detracted from the relevance of Dr.

 Bartholomew’s evaluation, stating the court would not use it ‘as evidence of [Juan’s]

 legal sophistication or experience at the time [he] was advised of his Miranda rights.’

 (FF 27(1))[.]” (Alterations in original.) In other words, defendant contends that the

 trial court should not use evaluations about defendant’s competency to stand trial
 STATE V. BENITEZ

 2022-NCCOA-261

 Opinion of the Court

 which were conducted “long after the interrogation,” but the trial court considered

 this factor and explicitly noted it was not using the evaluations for the purpose of

 determining if defendant understood Miranda warnings. The trial court took great

 care to underline and emphasize that its determinations were based upon defendant’s

 age, experience, intelligence level, and ability to understand Miranda warnings at

 the time of interrogation.

¶ 20 Essentially, defendant contends, the trial court should have viewed the

 evidence in a light more favorable to him, and ultimately wrongly put the burden on

 him to prove he was not capable of understanding the Miranda warnings provided to

 him. But this is simply not what occurred; the findings which indicate the trial court

 did not find specific credible evidence do not, as defendant suggests, shift the burden

 to him, but rather address which evidence the trial court found credible and which it

 did not, an act completely within the province of the trial court as finder of fact. See

 Kabasan, 257 N.C. App. at 457, 810 S.E.2d at 705. In addressing defendant’s

 argument regarding further expert testimony, we noted above the numerous findings

 of fact made by the trial court, in its proper discretion, and we conclude the binding

 findings of fact do indeed support the trial court’s determination that defendant

 understood the Miranda warnings, and thus, the trial court properly denied

 defendant’s motions to suppress. These arguments are overruled.

 III. Conclusion
 STATE V. BENITEZ

 2022-NCCOA-261

 Opinion of the Court

¶ 21 Because the trial court considered all factors as directed by Benitez I and

 properly concluded that under the totality of the circumstances, defendant made a

 knowing and voluntary waiver of his Miranda rights when he made a statement to

 law enforcement, we affirm.

 AFFIRMED.

 Judges ARROWOOD and JACKSON concur.